# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| AMBER MARIE LETTS CORDOVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 3:12-CV-153 |
| ) | |
| UNIVERSITY OF NOTRE DAME DU LAC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion, filed by Plaintiff, Amber Marie Letts Cordova, on April 1, 2014 (DE #15.) For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Plaintiff, Amber Marie Letts Cordova ("Cordova"), originally filed a complaint on January 25, 2011, against Defendant, the University of Notre Dame du lac ("Notre Dame"), in the United States District Court for the Eastern District of Wisconsin; that case was transferred to the United States District Court for the Northern District of Indiana on May 17, 2011. (See *Cordova v. University of Notre Dame du lac and Charles Edward Barber*, cause number 3:11-CV-210, DE #36.) On June 23, 2011, the Honorable Robert L. Miller, Jr. dismissed the complaint pursuant to Federal Rule of Civil Procedure

8 because the complaint was "made unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter." (*Cordova v. University of Notre Dame du lac and Charles Edward Barber*, cause number 3:11-CV-210, DE #40.)  On July 13, 2011, Cordova, through her attorney Michael Dalrymple ("Attorney Dalrymple"), filed an amended complaint alleging that Notre Dame and Dr. Charles Barber violated her rights under Titles I and III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-5, the due process and equal protection clauses of the United States and Indiana Constitutions, and Indiana tort law by engaging in discriminatory practices based on her disabilities.  (See *Cordova v. University of Notre Dame du lac and Charles Edward Barber*, cause number 3:11-CV-210, DE #41.)  On December 13, 2011, Judge Miller issued an opinion and order for that case which, as related to Notre Dame, provided that several of Cordova's claims were dismissed with prejudice and several were dismissed without prejudice.  (See *Cordova v. University of Notre Dame du lac and Charles Edward Barber*, cause number 3:11-CV-210, DE #51.)

On March 30, 2012, more than three months later, Cordova, though Attorney Dalrymple, filed a new lawsuit in this Court against Notre Dame based on the same basic underlying facts as her previous lawsuit. (DE #1.)  In lieu of an answer, Notre Dame filed a motion to dismiss

on June 1, 2012, arguing that Cordova's claims were time-barred. (DE #6.) On June 15, 2012, Cordova, through Attorney Dalrymple, filed an unopposed motion for an enlargement of time to respond to Notre Dame's motion to dismiss. (DE #8.) The motion requested a ten day extension and stated that:

> Counsel for Plaintiff continues to research specific issues relating to defenses raised in Defendant's Motion to Dismiss and requires additional time to provide a complete and useful response. In addition, personal issues required the immediate and undivided attention of Plaintiff's counsel during this week. While all attorneys must tend to such matters, they have a greater impact on solo practitioners. This is Plaintiff's Counsel's first request for an extension in this matter.

(*Id*.) Magistrate Judge Christopher A. Nuechterlein granted the motion for enlargement of time. (DE #9.) On June 25, 2012, Cordova, through Attorney Dalrymple, filed a detailed response in opposition to Notre Dame's motion to dismiss, arguing that Cordova's complaint was timely filed pursuant to the applicable statute of limitations. (DE's #10 & #11.) Notre Dame filed its reply on July 3, 2012. (DE #12.) On March 29, 2013, this Court entered a twenty-one page opinion and order granting Notre Dame's motion to dismiss; Cordova's claims were dismissed with prejudice, and the clerk of court entered judgment on April 3, 2013. (DE's #13 & #14.)

On April 1, 2014, Cordova filed the instant *pro se* motion, asking the Court to reconsider and correct "error, mistake, abuse, incorrect actions, inactions" and to "[v]acate [j]judgment, or provide other

corrective action to allow [her] leave to retain counsel, and/or amend the complaint." (DE #15, p. 1.) Cordova apparently takes issue with the June 15, 2012, order which granted the request for an extension of time to respond to Notre Dame's motion to dismiss. (*Id*. at 2-7.) In her *pro se* motion, Cordova repeatedly states that Attorney Dalrymple "told" this Court that he had "disabling issues" and was "unable to practice law." (*Id*. at 2, 7.) Cordova argues that this Court "erred in not referring [Attorney] Dalrymple to be evaluated for fitness by the Supreme Court" because the Court "knew" that Attorney Dalrymple was "incapacitated" and yet chose not to allow for his "evaluation, discharge, or withdrawal." (*Id*. at 2-3.) Cordova states that "[w]hen a licensed professional admits incapacitation it is an error for any other licensed member of the profession to allow them to continue to practice." (*Id*. at 3.) She then proceeds to detail alleged "performance" issues of Attorney Dalrymple on various unrelated federal cases. (*Id*. at 3-4.)

Next, Cordova states that "[i]f the dismissal is based on technical failures and/or [Attorney] Dalrymple's inability to organize information correctly, then the dismissal is an evaluation of the attorney's admitted disabling issues, not a just evaluation of the claims." (*Id*. at 5.) Cordova proceeds to detail alleged deceptions and "misrepresentations" Attorney Dalrymple made to her regarding the response brief and his actions following the dismissal of the case. (*Id*. at 5-6.) Cordova alleges that Attorney Dalrymple was inebriated

when he discussed the Court's dismissal decision with her, was unreachable until after the time within which to file an appeal had expired, and failed to tell her that he was no longer representing her until November of 2013. (*Id*. at 6.) Cordova claims that "[a]ny delay in coming to this [C]ourt for reconsideration or correction is the result of [Attorney] Dalrymple having not been evaluated or removed when he admitted inability to practice." (*Id*.) After describing Attorney Dalrymple's alleged failures and shortcomings, Cordova nonetheless insists that she is not requesting reconsideration "due to attorney quality" but rather because "access to Justice must not be affected by Judicial mistake, error, misconduct, abuse, neglect or just failure to correct an error that occurred." (*Id*. at 7.)

Finally, Cordova requests that this Court correct its mistake(s) of not having Attorney Dalrymple's "incapacity properly evaluated and/or not allowing for a fair opportunity to respond to the 12(b)(6) or for other reasons the [C]ourt can articulate more clearly than I can." (*Id*.) Cordova concludes by providing a list of "magical words" in case they are "required" and asks the Court to:

1. Provide relief after judgment
2. Vacate judgment due to mistake
3. Vacate judgment due to inadvertence
4. Set aside the judgment
5. Recognize the decision it made was in error, incomplete or premature and allow for proper completion of this case (especially given the admitted disabling issues of Plaintiff's attorney)
6. Consider the judicial resources already spent and the small investment required to see that substantial justice is done

-5-

> 7. Take action necessary to do substantial justice, or at least remove Court error and allow for possible access to Justice.

(*Id.* at 7-8.)

Notre Dame filed a response on April 18, 2014, arguing that Cordova's motion does not establish grounds for relief under Federal Rule of Civil Procedure 60(b). (DE #16, pp. 3-4.) Notre Dame further notes that Cordova has already made three unsuccessful attempts to bring her claims, and it argues that allowing her yet another attempt would unduly burden both Notre Dame and this Court. (*Id.*) Cordova has not filed a reply.

DISCUSSION

Federal Rule of Civil Procedure 60(b) provides relief from final judgments in certain circumstances. *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). Motions made pursuant to Rule 60(b) must specifically indicate the grounds for reconsideration and "cannot be general pleas for relief." *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001); see also *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (plaintiffs who listed all of the subsections of Rule 60(b) but did not specify which one applied were found to have failed to make a cogent argument for relief under any provision which was "reason enough" for the district court to deny the motion).

Rule 60(b)(1) states that a court may relieve a party from a

final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Such mistake or inadvertence may be on the part of the court or the parties. *Mendez v. Republic Bank*, 725 F.3d 651, 658 (7th Cir. 2013). However, "errors of law and fact generally do not warrant relief under Rule 60(b)(1) and certainly do not require such relief." *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014) (citing *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002)). This is especially true where a movant seeks to use Rule 60(b) as a substitute for or to circumvent the time limitations of a direct appeal. *Id.* (citing *Mendez*, 725 F.3d at 659 ("If parties or courts could use Rule 60(b) to revive cases in which a party failed to appeal within the standard deadline, Appellate Rule 4 would lose much of its force.")).

When the issue involves excusable neglect, the Supreme Court has defined the inquiry as:

> at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993). The Court noted, however, that parties must be "held accountable for the acts and omissions of their chosen counsel . . . [and] the proper focus is upon whether the neglect of

respondents *and their counsel* was excusable." *Id*. at 397 (emphasis in original). The Seventh Circuit has made it clear that:

> [t]he clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds. The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client. A lawyer who inexcusably neglects his client's obligations does not present exceptional circumstances. . . . Deception of a client becomes the liability of the client's attorney and not the client's opponent. Since clients must be held accountable for their attorney's actions, it does not matter where the actions fall between mere negligence and gross misconduct. Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary.

*Bakery Mach.*, 570 F.3d at 848-49 (internal citations and quotation marks omitted). Overall, relief under Rule 60(b) in general is an "extraordinary remedy and is granted only in exceptional circumstances." *Id.* (citing *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1277 (7th Cir. 1990); see also *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (2005).

When a movant is seeking relief under the "catch all" provision found in Rule 60(b)(6), which includes "any other reason" that is justifiable, the application is "even more highly circumscribed." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995) (citation omitted) (citation omitted). "[C]arelessness or a lack of due care on the part of a litigant or [his] attorney does not provide

a basis for relief under Rule 60(b)(6)." *Id*. (citation omitted). Neither does an alleged legal misstep of the court. See *Banks*, 750 F.3d at 668 ("The narrow operation of this provision reinforces our interest in barring the use of Rule 60(b)(6) as a substitute for direct appeal.")

Here it is not clear what provision of Rule 60(b) Cordova is brining her motion. Her list of "magical words" near the end of her filing does not serve to remedy that failing, and the Court would be warranted in denying relief on that ground alone; however, in the interests of justice, the Court will assume that she is attempting to rely on either Rule 60(b)(1) or Rule 60(b)(6) for relief. To the extent that she takes issue with Attorney Dalrymple's performance (although she insists that she is "not requesting reconsideration due to attorney quality"), she has not articulated any specific instances of excusable neglect that would justify relief under Rule 60(b)(1). Nor has Cordova described any other actions that would justify relief under Rule 60's catch all provision. She alleges that Attorney Dalrymple deceived her and made misrepresentations to her regarding the response to Notre Dame's motion to dismiss. She also alleges that he was inebriated when discussing the Court's dismissal order with her and was unreachable until after the time within which to appeal expired. However, neither deception, neglect, negligence, nor even gross misconduct by an attorney qualifies as the type of "exceptional circumstances" necessary to quality for Rule 60(b)

relief.  See *Bakery Mach.*, 570 F.3d at 848-49.

To the extent that Cordova takes issue with this Court's ruling on the unopposed motion for enlargement of time to respond to Notre Dame's motion to dismiss filed by Attorney Dalrymple, she has likewise failed to identify adequate grounds for relief.  If Cordova is suggesting that this Court's ruling that granted the motion for enlargement of time (or even on the motion to dismiss itself) was done in legal error, her contention is not only without merit but it also lacks proper legal grounds under Rule 60(b).  Although Cordova repeatedly insists that Attorney Dalrymple "told" and "admitted to" this Court that he was "incapacitated," had "disabling issues," and was "unable to practice law," the record is clear that he did no such thing.  The motion for enlargement of time was a routine request for an extension -- Attorney Dalrymple indicated that he needed additional time to continue to research specific issues related to defenses raised in the motion to dismiss because personal issues had required his attention during the week, and he requested an additional ten days to complete the task.  At the end of those ten days, he filed a detailed response brief which made relevant legal arguments and cited applicable case law.  There was no suggestion of incapacitation or an inability to practice law that would have required this Court to deny to motion for enlargement of time and refer him to the Supreme Court for an "evaluation for fitness" as Cordova suggests.  There was simply no error, mistake, or inadvertence by the Court regarding the motion

that would provide grounds for relief under Rule 60(b)(1). Furthermore, Cordova has presented no evidence to convince the Court that there are or were any exceptional circumstances present that would necessitate relief from judgment under Rule 60(b)(6). Finally, as Notre Dame points out, Cordova has had several chances to bring her complaint, but she has been unsuccessful. Requiring Notre Dame to continue to defend against Cordova's claims would be unduly burdensome and unnecessary.

CONCLUSION

Therefore, for the reasons set forth above, Cordova's motion (DE #15) is **DENIED**.

DATED: October 8, 2014         /s/RUDY LOZANO, Judge
                               **United States District Court**